**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JANE DOE (B.C.),

Plaintiff,

v. Case No: 8:26-cv-586-JSM-CPT

MAYURI INN, INC., a Florida corporation, d/b/a Comfort Inn Bradenton North I-75; G6 HOSPITALITY PROPERTY LLC, a foreign limited liability company, d/b/a Motel 6 Bradenton, FL; D&K INVESTMENT LLC, a Florida limited liability company, d/b/a Sleep Inn Sarasota North; and SAKARDEV LLC, a Florida limited liability company, d/b/a Days Inn by Wyndham Bradenton I-75,

Defendants.

---

## ORDER

THIS CAUSE comes before the Court on Defendant G6 Hospitality Property LLC's Motion to Dismiss (Dkt. 83). The Court, having reviewed the relevant filings and being otherwise advised in the premises, concludes that the motion should be denied because the sex-trafficking claim is sufficiently pled under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKROUND

The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, creates a civil remedy against businesses that—while not criminally liable for sex

trafficking—benefit from facilitating it, either knowingly or because of a failure to exercise ordinary diligence. Plaintiff Jane Doe alleges she was sex trafficked by third parties at various hotels, including one owned by G6 Hospitality Property LLC ("G6"). Plaintiff brought TVPRA claims against G6 and the other hotels because she claims the hotels all "knowingly benefit[ed] . . . from participation in a venture which that person knew or should have known has engaged in" trafficking violations. 18 U.S.C. § 1595(a). The relevant facts now follow, which are assumed to be true at this motion to dismiss stage.

Plaintiff Jane Doe (B.C.) alleges that she is a survivor of sex trafficking who, at all material times, was addicted to drugs and was trafficked through force and coercion by two men, identified in the Second Amended Complaint as Trafficker 1 and Trafficker 2. She brings this action under the TVPRA for damages arising from trafficking that occurred at several public lodging establishments, including the Motel 6 Bradenton operated by Defendant G6 Hospitality Property LLC. Motel 6 Bradenton was a public lodging establishment, and its relevant premises included the front lobby, common areas, walkways, stairwells, private rooms, parking area, and curtilage.

The Second Amended Complaint alleges that sex trafficking is widely known to occur in the hotel industry and that government agencies and anti-trafficking organizations have long educated the hotel industry on how to identify and respond to trafficking. As to G6 Hospitality specifically, the Motel 6 Bradenton's knowledge was not limited to general awareness of sex trafficking in the hotel industry because Motel 6 Bradenton had known, since before Jane Doe's trafficking, that sex trafficking was ongoing and

widespread at its property. Motel 6 Bradenton was aware of criminal activity at the motel, including commercial sex trafficking and related crimes.

Motel 6 Bradenton allegedly failed to adequately train staff on sex trafficking detection and prevention, failed to train staff to identify red flags such as distressed appearances, unusual payment methods, and high foot traffic to rooms, and failed to implement sufficient procedures, protocols, or standards to detect or deter sex trafficking on the premises.

Further, Motel 6 Bradenton fostered conditions that facilitated trafficking. Housekeepers went room to room, but guests were allowed to refuse housekeeping for extended periods and exchange linens in the hallway. Motel 6 Bradenton had customers who paid in cash daily and who were scantily clad in a manner suggesting commercial sex activity. Motel 6 Bradenton was located in a high prostitution area and was known among those engaged in commercial sex as a location open to prostitution activity.

The sex trafficking problem at Motel 6 Bradenton was apparent enough that online hotel reviews discussed the sexualized atmosphere, prevalence of commercial sex, and ongoing drug and criminal activity. Motel 6 Bradenton was aware of those reviews and its reputation, but G6 failed to invest in security personnel or anti-trafficking protocols despite having knowledge of the trafficking at this location.

Jane Doe alleges that from March 12, 2016, through July 23, 2016, Trafficker 1 forced or coerced her into commercial sex trafficking at Motel 6 Bradenton. Trafficker 1 selected Motel 6 Bradenton because the motel would allow his trafficking activities to occur without reporting him, interfering with him, or stopping the criminal activity.

Trafficker 1 paid cash for rooms assigned to the back side of the property, with rules imposed and enforced by front desk staff, including placing rooms away from the lobby to avoid detection.

Trafficker 1 used extreme violence against Jane Doe to enforce compliance with his demands. At other hotels and motels, when Trafficker 1 inflicted violence and Jane Doe screamed, hotel staff intervened, called police, or asked them to leave. At Motel 6 Bradenton, however, Trafficker 1 inflicted the same level of violence, causing screaming, but no assistance or intervention occurred. Trafficker 1 maintained constant supervision over Jane Doe at Motel 6 Bradenton through physical violence, threats against Jane Doe and her family, exploitation of her drug dependency through controlled drug supply, and coordination with co-conspirators involving multiple females.

Trafficker 1 banged on doors to end "dates" that took too long. Housekeeping staff frequently encountered rooms that smelled strongly of marijuana and contained drug paraphernalia and large quantities of used condoms after Trafficker 1 and Jane Doe vacated the premises, yet they were permitted to rent again when they returned.

Despite Jane Doe's visible bruises, drugged appearance, lack of belongings, and up to twenty male visitors per day, Motel 6 Bradenton staff never called the police and never took steps to assist Jane Doe.

According to the allegations, Trafficker 1, his associates, and G6 Hospitality took part in a common undertaking or enterprise involving both risk and potential profit, in which Trafficker 1 and his associates ran a sex trafficking and drug-dealing operation out of Motel 6 Bradenton and both the traffickers and G6 financially benefited. G6

Hospitality profited from the room rentals, which were used for short duration stays, while Trafficker 1 received proceeds from Jane Doe's commercial sex acts and a venue to operate without the risk of Motel 6 Bradenton calling the police or forcing him to leave. Jane Doe received drugs to avoid withdrawal symptoms while engaging in commercial sex acts at the hotel. Jane Doe alleges that G6 Hospitality's conduct caused her physical, psychological, financial, and reputational harm.

Now G6 moves to dismiss, arguing that the TVPRA claim is insufficient to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim on which relief can be granted. When reviewing a motion to dismiss, courts must limit their consideration to the well-pleaded allegations, documents central to or referred to in the complaint, and matters judicially noticed. *See La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (internal citations omitted); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Courts must accept all factual allegations as true and view the facts in a light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In fact, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). To survive a motion to dismiss, a complaint must instead contain sufficient factual matter, accepted as true, to

"state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). This plausibility standard is met when the plaintiff pleads enough factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

**DISCUSSION**

The TVPRA creates a private cause of action for victims of sex trafficking crimes as follows:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

18 U.S.C. § 1595(a). The statute authorizes claims against two categories of defendants: (1) perpetrators of sex trafficking and (2) those who knowingly benefit, or attempt or conspire to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in sex trafficking. Courts refer to these claims, respectively, as "perpetrator" and "beneficiary" claims. *E.g.*, *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1268 (11th Cir. 2026).

Here, the Amended Complaint alleges only a beneficiary claim against Defendant G6. The elements necessary to plead a beneficiary claim differ from a perpetrator claim. In *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723-25 (11th Cir. 2021), the Eleventh Circuit distinguished the two claims. Perpetrator liability arises under § 1591, a criminal statute. It imposes liability on a defendant who knowingly recruits, entices, harbors,

transports, provides, obtains, advertises, maintains, patronizes, or solicits a person, knowing or in reckless disregard of the fact that force, threats of force, fraud, coercion, or a minor's age will be used to cause that person to engage in a commercial sex act. Because § 1591 is criminal in nature, courts apply its mental state requirements as written and do not extend perpetrator liability to defendants who are merely aware of commercial sex or suspicious activity without factual allegations tying that knowledge to force, fraud, coercion, or the plaintiff's age. *Id.* at 724.

The Eleventh Circuit discussed the elements of a beneficiary claim (otherwise referred to as a § 1595(a) claim) and concluded, as a matter of statutory construction, that § 1591's statutory definitions of "participation in a venture" and "venture" cannot be imported into § 1595(a). *Id.* The Eleventh Circuit opted to use the plain and ordinary meaning of the term "venture," which the court construed to mean an "undertaking or enterprise involving risk and potential profit." *Id.* at 724-25. For purposes of § 1595(a), therefore, the phrase "participation in a venture" means that a plaintiff must prove that the defendant "took part in a common undertaking or enterprise involving risk and potential profit." *Id.* at 725.

The *Red Roof* court also recognized that, in contrast to a perpetrator claim under § 1591(a)(2), a beneficiary claim under § 1595(a) allows for liability based upon a "should have known" standard. *Id.* at 725. The Eleventh Circuit interpreted this language to allow for liability based on constructive knowledge of a TVPRA violation, meaning knowledge that "one using reasonable care or diligence should have." *Id.* at 725 (quoting Constructive Knowledge, Black's Law Dictionary (11th ed. 2019)).

After *Red Roof*, the Eleventh Circuit clarified that a hotel operator does not share in the risk and potential profit of a sex trafficking venture merely by making money from the rental of hotel rooms via an ordinary buyer-seller transaction. *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1269 (11th Cir. 2026). Instead, "something more" is required. *Id.* (conceding that "something more" does not provide "very illuminating guidance" for district courts to follow).

So, to summarize, to state a beneficiary claim, "a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Red Roof*, 21 F.4th at 726.

G6's main argument in support of dismissal is that the allegations fail to show G6's "participation in a venture" as defined by *Red Roof* and its progeny. G6 correctly points out that, in *Red Roof*, the Eleventh Circuit concluded that a hotel operator does not participate in a sex trafficking venture if the allegations allege merely observation of the red flags of sex trafficking. 21 F.4th at 726-27; *see also K.H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024) (noting that "observing something is not the same as participating in it"). G6's argument is unpersuasive because Plaintiff alleges facts beyond observation. In other words, the "something more" is present here, which distinguishes this case from the cases G6 relies on in its filings.

Notably, a plaintiff may show participation in the form of "personalized support to a sex trafficker." *A.G.*, 171 F4th at 1269. The Second Amended Complaint alleges that G6's staff affirmatively imposed and enforced specific operational rules that served Trafficker 1's venture. In other words, rather than simply ignoring the red flags of sex trafficking, G6's staff proactively assisted Trafficker 1 so that his actions could continue without interruption from law enforcement. For example, Trafficker 1 was intentionally and strategically placed in back rooms away from the lobby to avoid detection. G6 staff enforced restricted hours and movement over Jane Doe (B.C.) on the property itself. When housekeeping staff repeatedly encountered rooms (that Jane Doe/Trafficker 1 occupied) smelling strongly of marijuana and containing drug paraphernalia and large quantities of used condoms, they permitted Jane Doe/Trafficker 1 to rent again on every subsequent return to the property.

Trafficker 1 selected Motel 6 Bradenton because the staff permitted his trafficking activities to continue without reporting, interfering, or stopping them. After witnessing clear and tell-tale signs of sex trafficking taking place, G6 affirmatively elected to stand aside, not call the police, and not interfere, so that it could continue reaping ongoing room reservation fees.

The allegations go beyond mere observation because imposing rules that benefit a specific trafficker, like concealing his trafficking operation from public view and restricting the victim's physical movement, are affirmative acts. Plaintiff also avers that Trafficker 1 selected Motel 6 Bradenton specifically because its staff allowed his trafficking activities to continue without reporting, interfering, or stopping them. These

allegations describe a hotel that did not merely fail to stop trafficking—it proactively created the conditions under which trafficking could reliably operate, and traffickers knew it. Importantly, Plaintiff needs to allege a plausible claim, not establish it at this motion to dismiss stage, a line that G6 blurs in its filings.

G6's remaining arguments in favor of dismissal are more appropriate on a motion for summary judgment. For example, G6 contends that it cannot be responsible for employees that were not acting in the scope of their employment but scope of employment questions heavily rely on the factual record, which is undeveloped at this point. *See DK v. Sch. Bd. of Manatee Cnty.*, Fla., No. 8:14-CV-2329-T-33TBM, 2014 WL 5473578, at *2 (M.D. Fla. Oct. 28, 2014) ("[B]ecause vicarious liability claims are a fact intensive inquiry, this issue is more appropriately addressed at the summary judgment stage."). As pled, the facts are sufficient to allege G6's vicarious liability to survive a motion to dismiss. *See Witover v. Celebrity Cruises, Inc.*, 161 F. Supp. 3d 1139, 1150 (S.D. Fla. 2016) (noting that "the nature and scope of an agency relationship is intensively factual and will almost always require discovery to fully resolve the issues").

Also, G6's attempt to reframe the Second Amended Complaint as alleging "prostitution" ignores numerous facts describing coercion. For example, Plaintiff alleges she is a sex-trafficking victim, that her trafficker recruited, harbored, advertised, maintained, and solicited her, and that she was forced to engage in commercial sex acts at Motel 6 Bradenton through force, threats of force, and coercion. She further alleges that she was regularly beaten, had visible injuries while at Motel 6 Bradenton, and was coerced through exploitation of her drug addiction and the threat of withdrawal sickness.

Trafficker 1 used extreme violence to enforce her compliance. G6's staff ignored Plaintiff's screams and the visible signs of physical abuse.

Finally, G6's argument that the allegations are implausible because they are similar to other sex trafficking complaints is unpersuasive to warrant dismissal. It is axiomatic that a similar *modus operandi* could repeat itself at different hotels that encourage and benefit from sex trafficking. Indeed, the parties cite to many sex trafficking cases (and the Court's research revealed additional cases) containing similar facts (some against G6's other properties), which is unsurprising considering the pervasiveness of sex trafficking in the United States.

In sum, the Court concludes that the allegations against G6 are sufficient to allege a beneficiary claim under the TVPRA. Whether Plaintiff can establish the claim is for another day.

It is therefore ORDERED AND ADJUDGED that:

1. Defendant G6's Motion to Dismiss (Dkt. 83) is denied.
2. Defendant G6 shall file its Answer to the Second Amended Complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida, this September 17, 2026

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record